UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY and GILBERTO HINOJOSA, in his capacity as Chairman of the Texas Democratic Party, § § § § § *Plaintiffs,* § § vs. § § REPUBLICAN PARTY OF TEXAS and § JAMES R. DICKEY, in his capacity as § Chairman of the Republican Party of Texas § and ROLANDO B. PABLOS, in his capacity as § Secretary of State for the State of Texas, § § *Defendant.* § | | Cause No. __1:17-cv-01186__ |

**PLAINTIFFS' ORIGINAL COMPLAINT**
**and**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**and**
**APPLICATION FOR PRELIMINARY INJUNCTION**
**and**
**APPLICATION FOR PERMANENT INJUNCTION**
**and**
**REQEUST TO SCHEDULE IMMEDIATE HEARING**

COME NOW, Plaintiffs, Texas Democratic Party and Gilberto Hinojosa, in his capacity as Chairman of the Texas Democratic Party, file this Original Complaint complaining of The Republican Party of Texas and James R. Dickey in his capacity as Chairman of the Republican Party of Texas and Defendant Rolando B. Pablos, in his capacity as Secretary of State for the State of Texas, and in support thereof would show the Court as follows:

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 1**

# I.  PRELIMINARY STATEMENT

1.      Second verse same as the first.  A little over ten years ago, the Republican Party of Texas tried to game the election laws of this state in order to remove a recently indicted member of Congress' name from the election ballot, after the deadline for doing so set by state law.  *See TDP v. Benkiser*, 2006 WL 1851295 (W.D. Tex. 2006).  This Court enjoined that effort and was affirmed by the United States Court of Appeals for the Fifth Circuit.  *See Id.* and *TDP v. Benkiser*, 459 F.3d 582 (5th Cir. 2006).  An emergency stay request concerning the Fifth Circuit's ruling was denied by the full Supreme Court.

2.      The purpose of this lawsuit is again to prevent the Republican Party of Texas from circumventing the Texas Election Code and violating the U.S. Constitution or, alternatively, give Plaintiffs the same benefits being enjoined by RPT.

3.      Blake Farenthold is the incumbent member of Congress for the Texas Congressional District Number 27.  Mr. Farenthold timely filed an application for the general primary ballot for the Republican Party of Texas seeking re-election as representative of the 27th Congressional District.  After having been the subject of months of press attention for alleged sexual harassment and misconduct, Mr. Farenthold announced on December 14, 2017 that he would not seek re-election.  Mr. Farenthold then sought to withdraw from the ballot by submitting a request to RPT on December 15, four days after the state law prescribed deadline for withdrawal.  *See* TEX. ELEC. CODE § 172.023(a).

4. Holding the apparent desire to remove Mr. Farenthold from the ballot but realizing state law and state courts would prohibit it from doing so, RPT filed suit in this Court arguing the state ballot application timing statutes violated the federal constitution as applied to RPT under these facts. *See RPT v. Pablos*, 1:17-cv-01167-SS (W.D. Tex.). After referring the case to a magistrate, a hearing was held on RPT's request for injunctive relief in what amounted to friendly litigation. After some discussion, the state evidently agreed to look the other way if RPT decided to violate state law. Given this concession, the case was dismissed and RPT intends to take action that will result in Mr. Farenthold's name not appearing on the ballot. Indeed, today, RPT announced that it "Grants Congressman Farenthold's Withdrawal Request" on the basis of RPT's federal rights. *See* https://www.texasgop.org/republican-party-texas-grants-congressman-farentholds-withdrawal-request/ (accessed Dec. 20, 2017).

5. All this time, TDP, its chairman and members have been operating in compliance with the state statutory scheme for the filing of candidate applications. In the past, TDP and its local county parties have been prevented from removing candidates from the ballot after the deadlines. TDP has never been informed that the Texas SOS would passively allow the violation of state laws and in fact, the opposite has been true.

6. TDP requests that the Court determine whether RPT's federal claims have merit, to wit, does the election schedule set by Texas violate the First Amendment associational rights of political parties as applied under these facts? If so, TDP and its member county parties will review its various candidate positions and lodge

withdrawals or additions as it sees fit. If RPT's federal constitutional claim does not have merit, TDP is deprived of the equal protection of the law and is therefore entitled to an injunction against Defendants requiring RPT to certify Mr. Farenthold's name on the ballot and/or enjoining SOS Cascos from taking any step to prevent Mr. Farenthold's name from appearing on the ballot.

## II.  PARTIES

7. Plaintiff Texas Democratic Party is a political party formed under the Texas Election Code, who can be served through counsel herein.

8. Plaintiff Gilberto Hinojosa is Chairman of the Texas Democratic Party and a registered voter in Texas.

9. Defendant Republican Party of Texas is a political party formed under the Texas Election Code, who can be served through its chairman James R. Dickey wherever he may be found.

10. Defendant James R. Dickey is sued in his capacity as Chairman of the Republican Party of Texas and he may be served wherever he is found.

11. Defendant Rolando B. Pablos is sued in his capacity as the Secretary of State for the State of Texas and may be served with process at The Capitol, Suite 1E.8, Austin, Travis County, Texas 78701.

## III.  JURISDICTION AND VENUE

12. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343(3) & (4), 1367(a) and 1983.

13.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to these claims occurred in this district.

## IV.  DECLARATORY JUDGMENT

14.     This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65 to enforce rights guaranteed under the Fourteenth and First Amendments to the United States Constitution.  This action is brought to prevent deprivation under color of state law of the rights, privileges and immunities secured to Plaintiffs by the aforementioned statutes and constitutional provisions.

## V.  FACTUAL ALLEGATIONS

15.     Blake Farenthold currently represents Texas's 27th Congressional District in the U.S. House of Representatives.

16.     Mr. Farenthold filed an application for a place on the 2018 general primary election ballot with Chairman Dickey on or before December 11, 2017, in accordance with Section 172.023(a) of the Election Code.

17.     Multiple other individuals also filed timely applications for places on the 2018 primary election ballot to run for the office currently held by Mr. Farenthold, including candidates for the Democratic Party's nomination.

18.     On December 14, 2017, Mr. Farenthold announced that he will not seek reelection to the U.S. House of Representatives in 2018. Following that announcement, Mr. Farenthold completed and executed a formal request to

withdraw his application for a place on the 2018 primary election ballot on December 14, 2017. *See* Ex. 1. attached to RPT's Complaint in Cause 1:17-cv-01167-SS (ECF 1-1).

19. Mr. Farenthold's formal request to withdraw his application for a place on the 2018 primary election ballot was received by Chairman Dickey on December 15, 2017.

20. The Election Code specifies that "[a]n application for a place on the general primary election ballot must be filed not later than 6 p.m. on the second Monday in December of an odd-numbered year." TEX. ELEC. CODE § 172.023(a). In the instant matter, that date was December 11, 2017.

21. The Election Code requires that "[a]n application for a place on the general primary election ballot must be filed with: (1) the state chair, for an office filled by voters of more than one county; or (2) the county chair or the secretary, if any, of the county executive committee, for an office filled by voters of a single county." TEX. ELEC. CODE § 172.022(a).

22. The Election Code requires that "the state chair shall certify to the secretary of state for placement on the general primary election ballot the name of each candidate who files with the chair an application that complies with Section 172.021(b)." TEX. ELEC. CODE § 172.028(a). The Election Code does not specify a deadline by which Chairman Dickey is required to make this certification to the Secretary of State; rather, the statute provides that "[t]he secretary of state may by rule prescribe a deadline by which the state chair must deliver the chair's

submission regarding a candidate to the secretary of state. . ..." TEX. ELEC. CODE § 172.029(c).

23. The Texas Administrative Code specifies that, "[b]y not later than the 8th day after the regular filing deadline, the chair shall submit a candidate's information and a notation concerning the candidate's status for all candidates who filed, in accordance with §172.029 of the Texas Election Code." 1 TEX. ADMIN. CODE § 81.112(a)(4).

24. Thus, pursuant to the Texas Administrative Code, Chairman Dickey was required to certify primary candidate names to the Secretary of State by December 18, 2017, eight days after the regular filing deadline of December 11, 2017.

25. The hearing this Court held yesterday was one day after this deadline.

26. Chapter 81.112(a)(4) of the Texas Administrative Code places the deadline for submitting candidate names to the Secretary of State one day before the statute requires Chairman Dickey to notify each county chair that the certification has been posted to the Secretary of State. *See* TEX. ELEC. CODE § 172.028(b) ("Not later than the ninth day after the date of the regular filing deadline, the state chair shall notify the county chair in each county in which the candidate's name is to appear on the ballot that the certification has been posted by the secretary of state.").

27. In summary: a 2018 Republican candidate for the U.S. House of Representatives must file his or her application with Chairman Dickey by December 11, 2017; Chairman Dickey must then submit the candidate's name to

the Secretary of State by December 19, 2017; and Chairman Dickey must then provide notice of the certification to the county chairs by December 20, 2017.

28. The Election Code specifies, "[a] candidate for nomination may not withdraw from the general primary election after the first day after the date of the regular filing deadline for the general primary election." TEX. ELEC. CODE § 172.052(a). Furthermore, "[a] withdrawal request for the general primary must be filed with the authority with whom the withdrawing candidate's application for a place on the ballot is required to be filed." TEX. ELEC. CODE § 172.052(b). In other words, the Election Code requires a 2018 Republican candidate for the U.S. House of Representatives to file a withdrawal request with Chairman Dickey by December 12, 2017.

29. The Election Code provides that "[a] candidate's name shall be omitted from the general primary election ballot if the candidate withdraws, dies, or is declared ineligible on or before the first day after the date of the regular filing deadline." TEX. ELEC. CODE § 172.057.

30. As specified above, Mr. Farenthold's formal request to withdraw his application for a place on the 2018 primary election ballot was received by Chairman Dickey on December 15, 2017.

31. Upon receiving Mr. Farenthold's formal request to withdraw his application for a place on the 2018 primary election ballot, Chairman Dickey promptly forwarded the request to the Secretary of State.

32.     Because Farenthold's name was certified by the deadline, and because his withdrawal came after the deadline for withdrawal, his name shall appear on the ballot under state law.

33.     In RPT's suit, the SOS took the position that the foregoing description for the election schedule was accurate and lawful.

34.     The only reason Farenthold's name could be lawfully omitted from the ballot is if the state law scheme violates federal law, as RPT claimed in its federal lawsuit and the SOS denied.

35.     Evidently the RPT and the SOS have agreed to a scheme where in state law can be violated under the unproven assertion that this long-in-place election schedule scheme violates RPT's right of freedom of association under the First Amendment.

36.     Of course, if RPT's federal rights are violated by this scheme, so are TDP's.

37.     RPT cannot be allowed to knowingly violate state law, remove a candidate from the ballot well after the deadline and do so all under the unproven claim that the state's laws violate the federal constitution.  If the scheme violates the federal constitution, then TDP is entitled to know so it can avail itself of the same rights.

38.     TDP is entitled to know if any deadline now exists.

39.     TDP is entitled to know if it can add candidates to the ballot, including District 27 since the incumbent may be allowed to be removed without regard to state law.

40. TDP has standing to bring this action for the reasons held by the Fifth Circuit in *TDP v. Benkiser*, 459 F.3d 582 (5th Cir. 2006), such cognizable harms described therein are hereby pleaded in full herein.

41. TDP and its members have prepared for a campaign involving Mr. Farenthold and the unlawful removal from the ballot will cause TDP economic harm.

42. TDP and its members have been complying with state law election deadlines concerning candidate name placement on the ballot,

43. TDP is harmed when the other major political party is allowed to operate under different rules.

44. TDP is harmed when state government chooses to look away when RPT violates state law but TDP is nevertheless required to comply.

45. TDP's harms are, in many respects, irreversible absent injunctive relief and monetary judgment is insufficient to cure all of its alleged harms.

46. RPT and Dickey's actions amount to official government action under color of law.  The state scheme grants RPT and Dickey state powers to run a portion of the election scheme.

47. SOS Cascos actions in allowing the removal of Farenthold's name is state action under the color of law.

48. TDP and Hinojosa bring this action to remedy the deprivation of their rights under federal law.

## VI.  CAUSES OF ACTION

### Count 1

### RPT's Actions and the State's Acquiescence Thereto Violates The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

49. Plaintiffs re-allege foregoing.

50. The facts as described herein, if allowed un-arrested by injunctive relief, will amount to the deprivation of Plaintiffs' rights to equal protection of the laws.

51. Plaintiffs have been, are and will be required in future elections to comply with the state election schedule.  When Plaintiffs have or will seek to remove a name after the deadline, the state will refuse or prevent it from doing so.

52. Plaintiffs are harmed by the disparate enforcement of state election laws.

53. Plaintiffs are entitled to an injunction that ensure the laws are applied equally to both major political parties.

54. Plaintiffs are entitled to declaratory judgment as to the rights of the parties.

55. Plaintiffs are entitled to attorneys fees and litigation costs pursuant to 42 U.S.C.  §§ 1983 and 1988.

### Count 2

### RPT's Claim that State Law Violates The First Amendment to the United States Constitution

56. Plaintiffs re-allege the foregoing.

57. RPT claims the state election timetable described herein violates the First Amendment Associational Rights of political parties as applied under these facts.

58.     But for RPT's interpretation under federal law, RPT would be required to follow state law.

59.     Plaintiffs are dubious under current precedents as to the viability of RPT's claim but TDP is entitled to have it adjudicated so that it can preserve its associational rights.

60.     Plaintiffs pray the Court determine whether the election schedule at issue here is in compliance with federal guarantees of associational rights.

61.     If the election schedule is violative of federal associational rights, Plaintiffs are entitled to an injunction against their enforcement.

62.     If the election schedule is not violative of federal associational rights, Plaintiffs are entitled to an injunction preventing the unequal application of the election calendar.

63.     Plaintiffs are entitled to declaratory judgment as to the rights of the parties.

64.     Plaintiffs are entitled to attorneys fees and litigation costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## VII.   APPLICATION FOR INJUNCTIVE RELIEF[1]

### 1.  Request for Temporary Restraining Order

65.     Plaintiffs ask for a temporary restraining order as laid out above.

66.     It is probable that the Plaintiffs will prevail against the Defendants on the merits and obtain permanent injunctive relief precluding the violations of law alleged herein.

---

[1] Shortly, Plaintiffs will file a declaration in support of their Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.  A proposed order for a Temporary Restraining Order will also be filed.

67.     If the Plaintiffs' Application for Temporary Restraining Order and Injunctive Relief is not granted, irreparable harm is imminent because, on information and belief, Defendants intend to conspire together to allow Mr. Farenthold's name to be removed from the ballot while at the same time holding Plaintiffs to this election schedule this year and in election hereafter.

68.     The Plaintiffs have no adequate remedy at law because the substantial damages and harm from Defendant's conduct are incalculable and a money judgment could not serve as adequate compensation for the wrong inflicted on the Plaintiffs and the voters of the state.

### 2.  Request for Preliminary Injunction

69.     Plaintiffs re-allege the foregoing.

70.     The Plaintiffs ask the Court to set this request for preliminary injunction for hearing, and after the hearing, enter a preliminary injunction granting the relief requested herein.

### 3.  Request for Permanent Injunction

71.     Plaintiffs re-allege the foregoing.

72.     After full trial on the merits, the Plaintiffs ask the Court to enter a permanent injunction granting the relief requested herein.

73.     If somehow the Defendants are able to scheme the election process such that they are able to remove Mr. Farenthold's name, despite an inadequate federal basis to do so, and in such a way that injunctive relief is unable to remedy same, Plaintiffs are entitled to a determination of the merits in this case because Plaintiffs will suffer similar harms in the future and the actions of these Defendants

demonstrate that such a scheme is capable of repetition yet evading court review. Plaintiffs, under these circumstances, are also entitled to a permanent injunction governing future elections so that Plaintiffs' rights cannot be violated in this manner again.

## PRAYER

74. For the foregoing reasons, the Plaintiffs respectfully request that Defendants be cited to appear and that the Court enter judgment against Defendants consistent with the relief requested herein and also award Plaintiffs reasonable and necessary attorneys fees, litigation expenses, court costs, pre and post-judgment interest and such other and further relief to which they may be justly entitled at law or in equity.

Respectfully submitted,

TEXAS DEMOCRATIC PARTY and
GILBERTO HINOJOSA, in his capacity as
Chairman of the Texas Democratic Party


By:     */s/ Chad W. Dunn*
       Chad W. Dunn
       State Bar No. 24036507
       General Counsel
       TEXAS DEMOCRATIC PARTY
       BRAZIL & DUNN
       K. Scott Brazil
       State Bar No. 02934050
       4201 Cypress Creek Pkwy., Suite 530
       Houston, Texas 77068
       Telephone: (281) 580-6310
       Facsimile: (281) 580-6362


       ATTORNEYS FOR PLAINTIFFS